UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


TODD MICHAEL PORTER,

    Plaintiffs,

v.                                                                  Case No. 2:14-cv-255
                                                                  Hon. GORDON J. QUIST

ANN BARSCH, et. al.,

    Defendants.
_____/


## REPORT AND RECOMMENDATION

This is a civil rights action brought by former state prisoner Todd Michael Porter pursuant to 42 U.S.C. § 1983. Plaintiff's amended complaint alleges that former Alger Correctional Facility librarian Janice Yoak refused to provide Plaintiff with true copies of a complaint that he filed in the Ingham County Circuit Court challenging his misconduct conviction for possession of a weapon. Plaintiff was ordered to serve true copies on the MDOC and the Michigan Attorney General's Office, and to file a certificate of service. Defendant Yoak refused to provide Plaintiff with true copies of his complaint and Plaintiff never filed a certificate of service in the Ingham County Circuit Court. As a result, Plaintiff's complaint was dismissed. Plaintiff asserts that Defendant Yoak violated his right of access to the courts and retaliated against him when she refused to provide Plaintiff with true copies of his complaint for service of process. Plaintiff filed a motion for summary judgment (ECF No. 59). Defendant filed a motion for summary judgment (ECF No. 60).

On June 27, 2011, Plaintiff was found guilty of the misconduct charge of possession of a weapon. Plaintiff received 30 days detention and 30 days loss of privilege. The hearing officer explained:

> On 6/16/11 it was discovered that the prisoner had a weapon made of sharpened metal rod and a cloth/pencil/ thread handle. Prisoner knew he had the weapon as it was taped to the underside of his locker. Prisoner had no authorization to have the weapon. Prisoner claims that the weapon did not belong to him, but to his roommate, Fisher. If that is true, that is not a defense as the prisoner acknowledged that he knew of the weapon but he allowed the weapon to be in his room and did not notify staff about the presence of the weapon. (Prisoner wrote in his letter to the inspector dated the same day that he received this misconduct report. "I know that he had a weapon because he told me, but said it was outside . . . About a week or so ago, he came to me and told me that a black came to him and told him that he had left a 'burner.'" In his statement for his hearing, he acknowledged that he had searched his room and "could feel something behind (the locker).) Prisoner would be guilty as an accomplice. Prisoner, however, is not believed that he had nothing to do with the weapon. First of all, he knew exactly how the weapon had been made. He knew that the pencil came from his cell and that the thread came from the bottom of Fisher's jacket. Prisoner had too much knowledge for him to be credible in his assertion that he did not know that the weapon was in his cell. Second, prisoner's anger over the fact that he did not believe that the weapon was worthy of that title because "it was nothing but a little piece of wire" sounded more in ownership than anything else. Prisoner was trying to minimize the item, which would be consistent with it belonging to him. Reporting staff member factual and is credible as to what occurred. Prisoner failed to rebut the presumption of possession contained in PD 03.03.105(F) and, even if he had, he would still be guilty of the charge as an accomplice as he knew that there was a weapon in the cell as he had felt "something" and knew that Fisher had it. Charge upheld.

(ECF No. 59, PageID.363). Plaintiff's request for rehearing was denied.

Plaintiff filed a Petition for Judicial Review in the Ingham County Circuit Court. On May 7, 2012, Judge Rosemarie E Aquilina issued an order requiring Plaintiff to submit a proof of service within 28 days. The order stated:

> Petitioner filed an *Administrative Appeal* with this Court on April 16, 2012. However, Petitioner has failed to file a proof of Service with this Court showing he properly served the Michigan Department of Corrections and the Michigan Attorney General's Office as required by MCR 7.105(D). This Court now grants Petitioner twenty-eight (28) days from the date of this Order to file his Proof of Service. If this Court does not receive Petitioner's Proof of Service within twenty-eight (28) days of this Order, this case will be dismissed.

(ECF No. 59, PageID.436). Plaintiff filed a motion dated May 18, 2012, in the Ingham County Circuit Court requesting an order to obtain copies of his complaint. Plaintiff explained that he made a request to Defendant Yoak for copies of his complaint on May 15, 2012, but on May 16, 2012, Defendant Yoak denied the request. In the denial, Defendant Yoak stated that copies of the complaint were reproducible by the prisoner and that Plaintiff had already received three copies of the complaint for filing and service on December 8, 2011. Plaintiff stated in his motion that the order from the Circuit Court required "true copies." Further, Petitioner conceded that he made an error by not serving the Michigan Department of Corrections.

Plaintiff filed a grievance on the issue, which was denied at Step I because although MCR 7.105(D) requires true copies, Plaintiff had the ability to make copies that would be "sufficiently close to the original that anyone could understand it" and would be true copies. In addition, Plaintiff had already received three copies of his complaint. Plaintiff was informed that he could resubmit for one copy of his compliant to serve the remaining party. (ECF No. 59. PageID.455). The grievance was upheld at Step II.

On June 26, 2012, Judge Aquilina dismissed Plaintiff's complaint due to his failure to submit a proof of service to the court as required. (ECF No. 59, PageID.459). Plaintiff's motion for reconsideration was denied on September 17, 2012. (ECF No. 59, PageID.477). Judge Aquilina acknowledged that Plaintiff had served the Attorney General's Office with a copy of the complaint, but had conceded that he failed to serve the Michigan Department of Corrections. The Court noted that although Plaintiff claimed that he was unable to timely follow its order for proof of service, Plaintiff was able to timely file a Motion for Reconsideration. (PageID.478).

Plaintiff argues that he is entitled to summary judgment due to Defendant Yoak's refusal to provide copies of his complaint which made it impossible for him to serve "true copies" on the Michigan Attorney General and the Michigan Department of Corrections. As a result, Plaintiff argues that he was unable to comply with the order and submit a proof of service because proper service of his complaint was impossible. Defendant Yoak argues that she is entitled to qualified immunity from liability because Plaintiff had already received three copies of his complaint for service, Plaintiff could make his own copies by simply typing new copies, and Plaintiff was not indigent and could have paid for copies instead of using his money to buy personal items from the prison store. Defendant Yoak argues that Plaintiff's request for injunctive relief is moot because she is no longer employed by the MDOC and Plaintiff has been released from prison.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to

4

interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff has sued Defendant Yoak in both her individual and official capacities. The Eleventh Amendment bars litigants from suing a state in federal court. When a suit for damages is brought against a state official in his official capacity, the case is one against the state and is barred by the Eleventh Amendment. *Hafer v. Melo*, 502 U.S. 21 (1991). Such a suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Id.* at 25 (quoting Monell v. New York City Department of Social Services, 436 U.S. 658, 690, n.55 (1978)). *See also Kentucky v. Graham*, 473 U.S. 159, 165 (1985). As a result, the suit is no different from one naming the state itself. *Hafer*, 502 U.S. at 26 (*quoting Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989)). Therefore, it is recommended that Plaintiff's

claim for damages against Defendant Yoak in her official capacity be dismissed as barred by the Eleventh Amendment.

The Sixth Circuit has held that transfer to another prison facility moots prisoner injunctive and declaratory claims. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89-1195, 1989 WL 107732 (6th Cir. September 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g., Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495-496 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyon*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-496. Plaintiff is no longer confined in prison or under the control of Michigan Department of Corrections. Defendant Yoak is no longer employed with the Michigan Department of Corrections. In the opinion of the undersigned, Plaintiff's request for injunctive relief is moot. Plaintiff's assertion that he may commit a crime in the future and be housed at the Alger Correctional Facility is speculative and ignores the fact that his claim is against a former Alger employee who allegedly failed to follow policy and law. Plaintiff is not challenging

6

an unconstitutional policy that could be used once again to allegedly violate his constitutional rights.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir.2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether a government official is entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006)); *cf. Pearson v. Callahan*, 555 U.S. 223 (2009) (holding that the two-part test is no longer considered mandatory; thereby freeing district courts from rigidly, and potentially wastefully, applying the two-part test in cases that could more efficiently be resolved by a modified application of that framework).

A qualified immunity analysis involves consideration of the clarity of the law at the time of the alleged violation to determine whether the asserted right was clearly established and consideration of the specific factual circumstances known by the officer to determine whether a reasonable officer could have known that their conduct violates that right. *Smith v. City of Wyoming*, 821 F.3d 697, 708 (6th Cir. 2016). Thus, the Court must consider "the plaintiff's asserted right with specificity, and focus on the particular facts known to the officer at the time." *Id.* "The relevant inquiry is whether existing precedent placed the conclusion" that the defendant

violated the plaintiff's rights "in these circumstances 'beyond debate.'" *Mullenix v. Luna*, 36 S.Ct. 305, 309 (2015), citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

Further, in order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals [from criminal convictions], habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Plaintiff has not shown that his administrative appeal of his misconduct hearing conviction qualifies as the type of action protected by *Bounds* as opposed to an impairment of litigation that is nothing more than an incidental consequence of his conviction. *Lewis*, 518 U.S. at 355. "[t]he right of access to the courts does not encompass a right of access to prison administrative proceedings." *Burns v. Heyns*, 2015 WL 4391983, 1:14-cv-733 (W.D. Mich. July 15, 2015). The same rationale applies to an administrative appeal of a prison administrative proceeding. A claim by a prisoner that his ability to file an administrative appeal of a prison misconduct conviction is not a direct appeal in a criminal conviction. Moreover, the consequences of a misconduct finding are the type of inconveniences a prisoner should expect as a result of his incarceration. Plaintiff complains that he received 30 days of segregation, which required him to be confined in his cell for 23 hours a day five days a week, and 24 hours per day the remaining two days per week. Plaintiff claims that this finding also adversely affected his parole and his chance for a transfer to a lower tier prison. Consequences of a misconduct conviction fail to implicate constitutional concerns. *Newell v. Borgen*, 2015 WL 437675, 2:14-cv-172 (W.D. Mich. Feb. 3, 2015). Although, an indefinite period of segregation could raise constitutional concerns in extreme circumstances, a 30 day period of segregation after being found guilty of a misconduct

9

fails to rise beyond what is expected in a prison. *Id*. Consequences involving job loss, the ability to transfer to a lower security prison, to participate in programs, and loss of parole eligibility fail to raise violations of constitutional rights. *Id*. This is especially true when a prisoner merely speculates that the misconduct conviction would affect his parole or eligibility to transfer to a less restrictive prison. A prisoner has no inherent right to parole or to be conditionally released before the expiration of his prison sentence. *Greenholtz. v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979). Similarly, prisoners have no constitutional right to be house in a particular prison or held at a specific security classification level. *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).

The Sixth Circuit has repeatedly held that the constitutional right of access to the courts does not entitle prisoners to free access to photocopying machinery. *See*, *e.g.*, *Courtemanche v. Gregels*, 79 Fed. Appx. 115 (6th Cir. 2003) ("the right of access does not include a per se right to photocopies in whatever amount a prisoner requests . . . . the denial of photocopies did not impact Courtemache's right of access to the court to the extent that his underlying case did not involve his direct criminal appeal . . ."); *Bell-Bey, v. Toombs*, No. 93-2405, 1994 WL 105900 (6th Cir. March 28, 1994) ("the law is settled that an inmate does not enjoy a federal constitutional right to unlimited free photocopying services"); *Hawk v. Vidor*, No. 92-2349, 1993 WL 94007, *1 (6th Cir. March 31, 1993) ("the right to have access to the courts is not interpreted as requiring unlimited access to photocopiers"); *Al- Jabbar v. Dutton*, No. 92-5004, 1992 WL 107016, at *1 ("a prisoner's right of access to the courts does not guarantee him unlimited photocopying at the state's expense") (6th Cir. May 19, 1992); *Bond v. Dunn*, No. 89-6181, 1989 WL 149988, at *1 (6th Cir. Dec. 12, 1989) ("The constitutional right of access to the courts does not require that

prison officials provide inmates free access to photocopying machinery"), *cert. denied*, 494 U.S. 1006 (1990); *Fazzini v. Gluch*, No. 88-2147, 1989 WL 54125, *2 (6th Cir. May 23, 1989) ("The right of access to the courts does not require that prison officials provide free, unlimited access to photocopy machines").

Plaintiff argues that Defendant Yoaks unreasonable refusal to provide him with copies of his complaint prevented him from complying with Judge Aquilina's order. Plaintiff asserts that without free photocopies he was unable to serve true copies before he submitted a proof of service to the court. When determining whether a prison official is entitled to qualified immunity the court must determine whether the prison official reasonably believed that the action they took was justified. *Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997). The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)). In this case whether Defendant Yoak may invoke the defense of qualified immunity depends on whether she

reasonably believed that her action in refusing to make copies of Plaintiff's complaint did not violate clearly established law.

> Whether defendant's actions in this case were clearly proscribed by the law is to be determined by the "objective legal reasonableness" of the action with regards to the legal rules that were clearly established at the time it was taken. *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738. The right allegedly violated must also be clearly established in a much more particularized sense than a broad constitutional right. *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039; *Marsh v. Arn*, 937 F.2d 1056 (6th Cir. 1991). Therefore, the issue here is whether plaintiff's right of access to the courts includes a particular right to have access to free photocopying and to have access to the library at least two days a week, for two and one half hours a day for an entire year, on the day of his choosing.
>
> Because neither the constitutions nor statutes require state prisons in Michigan to provide prisoners with free photocopying services, defendants did not violate clearly established statutory or constitutional rights by not providing plaintiff with free photocopying. *Johnson*, 948 F.2d at 521; *Jones*, 697 F.2d at 803; *Harrell*, 621 F.2d at 1061; *Hudson*, 619 F. Supp. at 1544. Also because prisons are not obligated to provide prisoners with a specific amount of time in the library, removing plaintiff's name from the call-out list, thereby denying plaintiff of two and one half hours of library time, likewise, did not violate clearly established statutory or constitutional rights, *Walker*, 771 F.2d at 931. Therefore, any officer in defendant's place could have reasonably believed that refusing to photocopy a legal form or removing a prisoner's name from a call-out list did not violate the defendant's constitutional rights. Accordingly, the defense of qualified immunity is available to defendant.
>
> In addition, this Court concludes that, even had there been a violation of plaintiff's constitutional rights, defendant would have been reasonably justified in his belief that the law did not proscribe his actions, and that his actions did not violate plaintiff's statutory or constitutional rights. Therefore, plaintiff's claim for damages can be properly terminated by a summary judgment based on the Court's find that defendant is entitled to the defense of qualified immunity. *Harlow*, 457 U.S. at 808, 102 S. Ct. at 2733.

*Oswald v. Graves*, 819 F. Supp. 680, 684 (E.D. Mich. 1993).

First, Defendant Yoak could rely on the fact that since Plaintiff was not directly appealing his criminal conviction, his state court case was not the type of action protected by *Bounds*. Second, Defendant Yoak was aware that Plaintiff was provided three copies of his complaint by the library staff. Third, despite Plaintiff's assertion that he needed "true copies" to serve the Michigan Department of Corrections and the Michigan Attorney General's Office, Defendant Yoak could rely on the definition of a true copy as provided in the Black's Law Dictionary and require Plaintiff to reproduce his complaint by hand. As pointed out by Plaintiff, Defendant Yoak is not an attorney and she is not expected to know whether the definition of true copy as defined in Black's Law Dictionary is the definition that could be relied upon in the state or federal courts of Michigan. Fourth, Plaintiff had funds to pay for his own photocopies, but instead made the choice to purchase items from the prison store. Finally, Plaintiff asserts that he served his complaint on the Michigan Attorney General and sent a copy of his complaint to the Ingham County Circuit Court. In fact, Judge Aquilina acknowledged in her order of dismissal that Plaintiff had served the Michigan Attorney General but had not served the Michigan Department of Corrections. Plaintiff actually possessed his own copy of the complaint that he could have served on the Michigan Department of Corrections. Even if the service was not technically a "true copy" of the complaint, Plaintiff was acting pro se and pro se litigants are not held to the same standards as attorneys. As such, his pleadings are subject to less stringent standards than those prepared by attorneys. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972). Plaintiff had the ability to actually serve the Michigan Department of Corrections with a copy of his complaint and he could have at the very least substantially complied with order issued by Judge Aquilina by serving the MDOC and filing a proof of service with the Ingham County

Circuit Court. In the opinion, of the undersigned Defendant Yoak is entitled to qualified immunity on Plaintiff's access to the courts claim.

Plaintiff asserts that Defendant Yoak retaliated against him by refusing to provide photocopies of his complaint. Defendant Yoak argues that she is entitled to qualified immunity because Plaintiff cannot establish any of the factors necessary to assert a retaliation claim. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff asserts that he engaged in protected conduct by filing the administrative appeal of his misconduct conviction in the Ingham County Circuit Court and by filing grievances against Defendant Yoak after she had first refused to copy his complaint, but before her subsequent refusals to copy the complaint. Assuming that Plaintiff can establish the element of protected conduct, for the reasons explained Plaintiff cannot show that the refusal to provide copies of his complaint was adverse action and that the refusal was causally related to his asserted protected conduct. It was reasonable for Defendant Yoak to rely upon the fact that Plaintiff was already provided with three copies of his complaint, that Plaintiff had the ability to re-type his own copies

if necessary, and that Plaintiff had funds available to purchase copies of his complaint. In addition, as Plaintiff points out, Defendant Yoak was not an attorney and was not required to know the precise legal definition of a "true copy" under Michigan law. It was not unreasonable for Defendant Yoak to rely upon the Black's Law Dictionary definition. In the opinion of the undersigned, Plaintiff cannot establish that a genuine issue of material fact exists to defeat summary judgment for Defendant Yoak and Plaintiff's motion for summary judgment should be denied.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment. Accordingly, it is recommended that Defendant's Motion for Summary Judgment (ECF No. 60) be granted and that this case be dismissed in its entirety. It is further recommended that Plaintiff's motion for summary judgment (ECF No. 59) be denied.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:    September 5, 2017              */s/ Timothy P. Greeley*
                                          TIMOTHY P. GREELEY
                                          UNITED STATES MAGISTRATE JUDGE